## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 07-0875-CG-B |
| | ) | |
| **THU NGUYEN, aka Nguyen Thu, Thu Tony** | ) | |
| **Le, Thu Le, Thu Lee, Thu Lenguyen, Thu T.** | ) | |
| **Nguyen, Thu Tony Nguyen, Thu L. Nguyen,** | ) | |
| **Thu Tony Le Nguyen, Thu Tony Lee Nguyen** | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter is before the court on the plaintiff's motion for summary judgment (Doc. 11), the defendant's response thereto (Doc. 18), the plaintiff's reply (Doc. 33), and the plaintiff's motion to strike (Doc. 32). For the reasons stated herein, the plaintiff's motion to strike is due to be **GRANTED, in part**, **and DENIED, in part**, and the plaintiff's motion for summary judgment is due to be **GRANTED**.

**I. Introduction**

The Government instituted this action to obtain a civil judgment for a final civil monetary penalty administratively assessed and imposed against the defendant, Thu Ngyen (hereinafter "Nguyen"), for his wrongful importation of counterfeit purses and wallets. On June 13, 2008, the Government filed a motion for summary judgment (Doc. 11) and a memorandum and evidence in support of its motion (Doc. 12). On July 10, 2008, Nguyen filed his brief in opposition to the motion for summary judgment (Doc. 19) and an affidavit in opposition to the motion (Doc. 18). The Government filed a motion to strike Nguyen's affidavit (Doc. 32) and a

reply brief (Doc. 33)

on September 5, 2008.

## II.  Motion to Strike

Before addressing the Government's  motion for summary judgment, the court must rule on the Government's motion to strike Nguyen's affidavit, which he filed as his only evidence in opposition to the motion for summary judgment.  The Government's motion to strike is based on the grounds that the affidavit contradicts Nguyen's deposition testimony (and other uncontroverted evidence) and was filed in bad faith and/or solely for delay.  The Government also seeks an award of the expenses it incurred, including attorney's fees, in responding to Nguyen's affidavit.

On July 10, 2008, Nguyen filed his opposition to the Government's motion for summary judgment and submitted his own affidavit as the lone evidence opposing the entry of summary judgment.  His affidavit contains only the following statements:

> My name is Thu Nguyen and I am the Defendant in the above case.  I am making this Affidavit in opposition to the Motion for Summary Judgement filed by the United States in this case.  Concerning the counterfeit goods which are the subject matter of this lawsuit, I have no knowledge whatsoever of the shipment of these goods, never asked any third party for these goods to be shipped to me, nor do I presently or I have [sic] ever claimed any legal ownership to the same.

(Doc. 18, p. 3).

The Government contends that Nguyen knew his affidavit was not true when he signed it and submitted it to the court.  According to the Government, the evidence it submitted, including relevant excerpts of Nguyen's deposition, shows that Nguyen did have knowledge of the shipment of the counterfeit goods because he was directly involved in processing the shipment of the goods into this country.  The evidence also shows that he claimed legal ownership and a

protective interest in the goods on several occasions. The Government argues that the affidavit is, at best, a highly reckless misrepresentation of important facts in the pending litigation and, at worst, is a deliberate effort to mislead this court.

### A. Facts

The evidence submitted by the parties, absent the statements in Nguyen's affidavit, shows the following:

From October 28, 2002, until November 7, 2002, Nguyen visited Vietnam. (Thu Nguyen's Passport and Visa). At the time of his visit to Vietnam, Nguyen was operating at least two nail salons in Mobile, Alabama: one at Bel-Air Mall and the other at Springdale Mall. (Nguyen Depo. at p. 19). In or about February 2003, Nguyen received a package of documents from Vietnam. (Nguyen Depos. at pp. 84, 88, 131, 141). This package, which was postmarked January 28, 2003, included an "Invoice/Packing List" and a bill of lading. (Id.). The Invoice/Packing List, which was dated January 21, 2002,[1] listed Thu Nguyen as the consignee[2] of 113 leather handbags and 40 wallets with a combined value of $685 that were shipped from Vietnam. (Invoice/Packing List). The shipper was listed as Nghia Hiep Nguyen. (Id.). Nguyen claimed in his deposition that he does not know this person and that he does not know who sent him this package. (Nguyen Depo. at pp. 30, 87). The bill of lading, which was dated January 21, 2003, reflected the same information. (Bill of Lading). The address for Nguyen's nail salon

---

[1] Although the date on this document was 2002, it is clear from the other documents related to this shipment that this was a typographical error and that the document should have been dated 2003.

[2] According to the Declaration of Janet Trammell, an experienced customs broker, the term "consignee" as used on this document is another term or name for importer. (Trammell Decl. at ¶ 12).

at Springdale Mall was the one utilized on the shipping papers for the counterfeit purses and wallets. (Nguyen Depo. at pp. 84-85, 88). The telephone number for his Springdale Mall salon was also used to identify him as the intended recipient of the purses and wallets. (Nguyen Depo. at 85). Nguyen admitted he received these records before the shipment arrived in Mobile, Alabama, and that he took these records to attorney Douglas Dunning in April 2003 when he received correspondence from the U.S. Customs and Border Protection office ("CBP") regarding the seizure and notice of pending forfeiture of the suspected counterfeit purses and wallets. (Nguyen Depo. at pp. 88, 131, 141, 184-85, 197).

It is customary for the exporter of goods, while a shipment is en route, to send the importer documents and particulars about the shipment, including the bill of lading, freight forwarding notices, etc. (Trammell Decl. at ¶ 11). These records are necessary for the importer, his facilitator, or his agent to assist and facilitate the process of having the merchandise successfully passed though customs. (Id.).

The shipment of counterfeit Louis Vuitton purses and wallets departed Vietnam on January 31, 2003. (Transportation Entry Form). The ship carrying these purses and wallets arrived in California on February 19, 2003. (Id.). The freight forwarder, FCC Logistics, contracted with AZ West Co. to transport the goods from Los Angeles to Mobile Moving & Storage in Mobile. (Trammell Decl. at ¶ 13). While the shipment was en route to Mobile, FCC Logistics faxed a message to Mobile Moving & Storage requesting release to Thu Nguyen. (Trammell Decl. at ¶ 14). Shortly thereafter, Nguyen contacted or was contacted by Mobile Moving & Storage. (Id.). The shipment of the counterfeit purses and wallets was logged in on March 10, 2003. (Id.).

Because this was a commercial shipment, federal regulations required that Mobile Moving & Storage receive a customs clearance release before Nguyen could obtain the shipment.  (Trammell Decl. at ¶ 15).  Nguyen communicated about this shipment of purses and wallets on several occasions with members of the staff and the owner, Mike Serda, of Mobile Moving & Storage, before he received any notification from the CBP, about the procedures necessary to obtain a customs clearance release so that he could claim the purses and wallets.  (Nguyen Depo. at pp. 92-95, 134-35, 139, 198;  Trammell Decl. at ¶ 14).  Nguyen admitted driving to Mobile Moving & Storage at the Brookley Industrial Complex to participate in the processes necessary to obtain a customs release.  (Nguyen Depo. at pp. 92-95, 128, 135, 139, 198).

Nguyen also engaged Janet Trammell, a licensed customs broker at Richard Murray & Co. of Mobile, Alabama, to assist him in having his shipment cleared through customs.  (Nguyen Depo. at pp. 107, 121, 150-51, 198-99; Trammell Decl. at ¶ 18).  Nguyen testified that he communicated by phone, in person, and by facsimile transmissions with Trammell to provide her with the essential information necessary for her to process the customs clearance release.  (Nguyen Depo. at pp. 115-16, 121, 150-51, 198-99; Trammell Decl. at ¶¶ 18, 20-24).  For Richard Murray & Co. to act as a broker on behalf of an importer, the importer must execute a Power of Attorney.  (Trammell Decl. at ¶ 19).  Trammell faxed Nguyen a Power of Attorney for him to execute.  (Trammell Decl. at ¶ 20).  Nguyen admitted that he knowingly signed the required Power of Attorney for Richard Murray & Co. allowing that company and Janet Trammell to act on his behalf to work with the CBP to obtain a customs clearance release.  (Nguyen Depo. at pp. 113-17, 197; Trammell Decl. at  ¶¶ 21-22).  Nguyen's son Heiu Le

witnessed his father's signature on the Power of Attorney. (Nguyen Depo. at pp. 118-19).

Nguyen provided Trammell with the details on the shipment so that the appropriate bond, the appropriate customs duties, etc. could be calculated by Richard Murray & Co. as it began working with the CBP and Mobile Moving & Storage to secure release of the purses and wallets. (Nguyen Depo. at pp. 145, 149-51, 197, 231; Trammell Decl. at ¶¶ 22-23). Using a facsimile machine which belonged to his next-door business neighbor in the Springdale Mall shopping center, Dante's Pizza, Nguyen faxed records to Richard Murray & Co. that came from within the mailed package he received from Vietnam. (Nguyen Depo. at pp. 149-51, 197). These records identified the number of purses (113), the number of wallets (40), the claimed value of the shipment ($685.00), and the estimated weight of the shipment (287 pounds or 130 kilograms). Based on Nguyen's claimed value of the goods, Trammell calculated the appropriate bond based upon the anticipated duties that would be owed to the CBP. (Trammell Decl. at ¶ 23). On March 13, 2003, Trammell advised Nguyen by telephone and faxed correspondence that Richard Murray & Co. had to be paid its fee of $226.96 prior to completing work to obtain the customs release. (Nguyen Depo. at p. 121; Trammell Decl. at ¶ 24). Nguyen paid Richard Murray & Co.'s billing of $226.96. (Nguyen Depo. at pp. 121, 124, 126, 197, 199, 229, 230-31; Trammell Decl. at ¶ 24). Trammell then submitted the appropriate forms to the CBP. (Trammell Decl. at ¶ 25).

After inspecting the shipment of purses and wallets and making an initial determination that they were counterfeit goods, CBP officers seized the goods on March 31, 2003. (Vick Decl. at ¶ 4; Acrey Decl. at ¶ 5). By letter dated April 3, 2003, the CBP notified Nguyen that the suspected counterfeit goods had been seized. (Duff Decl. at ¶ 12). Enclosed in the letter was an

6

informational document entitled "Notice of Seizure and Information for Claimants Form AF-Post" which described the process of administrative forfeiture and potential for fines and penalties in the event Nguyen did not (1) return the form "Election of Proceedings, Form AF-Post," (2) file a complaint or claim regarding his rightful ownership or dispute whether the goods were counterfeit, and (3) post a small monetary bond in order for the matter to be referred to the United States Attorney to institute judicial forfeiture proceedings. (Id.). The certified mail receipt was mailed back to the CBP, dated April 4, 2003. (Duff Decl. at ¶ 14). Nguyen completed and signed the "Election of Proceedings Form AF-Post" on April 4, 2003, and sent it to the CBP. (Duff Decl. at ¶ 15; Nguyen Depo. at p. 174; Amended Answer (Doc. 8) at ¶¶ 15-16). The Election of Proceedings form which Nguyen signed clearly contains the following statement: "I understand that the property in which I have an interest has been seized by the Bureau of Customs and Border Protection, under Case No. 2003190100000901." (Election of Proceedings Form). Nguyen checked the box on that form that says: "[X] I REQUEST THAT THE BUREAU OF CUSTOMS AND BORDER PROTECTION REFER THE CASE FOR COURT ACTION. Please immediately refer the case to the U. S. Attorney for a court decision. I am filing/will file a claim and cost bond with you." (Id.).

After receiving written communication from the CBP, he met again with his attorney, Douglas Dunning, and they placed a telephone call on April 15, 2003, to Eloise Duff of the CBP to determine what could be done to prevent the forfeiture of the purses and wallets. (Nguyen Depo. at pp. 184-86, 199-200; Duff Decl. at ¶¶ 20, 22, 23, 24). Nguyen visited Duff at the CBP office on April 16, 2003, to determine what he needed to do to protect his shipment of purses and wallets. (Nguyen Depo. pp. 190, 200-01; Duff Decl. at ¶ 25). Duff advised him that she had set

forth his options in a letter she sent him on April 10, 2003, and that it was his decision as to which option to pursue. (Duff Decl. at ¶ 25).

### B. Legal Analysis

"When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." Van T. Junkins & Assoc., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984). "A party's affidavit may be disregarded as a sham when it contradicts, without explanation, [the party's] prior deposition testimony that established that there was not a genuine issue of material fact." Lawver v. Hillcrest Hospice, Inc., 300 Fed. Appx. 768, 771 (11th Cir. 2008). Although the sham affidavit rule is applied "sparingly," an affidavit which is inherently inconsistent with deposition testimony must be disregarded. See Allen v. Board of Public Educ. for Bibb County, 495 F.3d 1306, 1316 (11th Cir. 2007). "Under the law of this Circuit, [the court] may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1240 n. 7 (11th Cir. 2003).

As set forth in detail above, Nguyen's deposition testimony, as well as the authenticated documents and the unchallenged declarations of witnesses submitted by the Government, shows that the statements in Nguyen's affidavit that he has no knowledge whatsoever of the shipment of the purses and wallets and that he does not and has never claimed an ownership interest in the purses and wallets are simply not true. Those two statements in Nguyen's affidavit are due to be stricken because, rather than elaborating on or explaining his deposition testimony, they directly

contradict the deposition testimony.[3]  The motion to strike is due to be denied as to the statement in Nguyen's affidavit that he "never asked any third party for these goods to be shipped to me" because that statement is consistent with his deposition testimony.[4]

In its motion to strike, the Government also seeks an award of costs, including attorney's fees, for the expenses it incurred in responding to Nguyen's affidavit on the grounds that the affidavit was filed in bad faith or solely for delay.  Rule 56(g) of the Federal Rules of Civil Procedure provides as follows:

> If satisfied that an affidavit under this rule is submitted in bad faith or solely for delay, the court **must** order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt.

Fed. R. Civ. P. 56(g)(emphasis added).

According to the Government, on July 2, 2008, when its counsel and Nguyen's counsel discussed Nguyen's counsel's request that he be allowed to file an unopposed motion for enlargement of time to respond to plaintiff's Motion for Summary Judgment, the nature of Nguyen's anticipated affidavit was first revealed by Nguyen's counsel.  The following day, the Government's counsel wrote Nguyen's counsel urging him and his client to reconsider such an action and informing him that any such affidavit would be considered as being offered in bad

---

[3] The court believes that the sham affidavit rule should especially apply in a case such as this where the party's deposition was taken **after** the affidavit was submitted.  A party should not be allowed to persist in opposing summary judgment solely on the basis of an affidavit which is proven to be untrue by the party's own deposition testimony taken after the affidavit is submitted.

[4] Although this statement remains in the affidavit, it does not create an issue of fact because it is not material to the issue of whether Nguyen is liable for the penalty imposed by the CBP pursuant to 19 U.S.C. § 1526(f).  See discussion, infra, at pp. 16-17.

faith in light of all the evidence that his client was involved in the shipment of the purses and wallets. (Ex. 1 to Motion to Strike). Despite the overwhelming documentary and declaration evidence to the contrary already filed and despite being cautioned by the Government's counsel, Nguyen and/or his attorney persisted in filing an affidavit in which Nguyen claimed "he had no knowledge whatsoever" of the importation of the purses and wallets and that he had never claimed any ownership interest in them. During Nguyen's deposition, the Government's attorney made another offer for Nguyen to change his affidavit, but Nguyen refused. (Nguyen Depo. at pp. 29-30).

Under the facts of this case, the court cannot excuse the filing of Nguyen's brief, conclusory affidavit in opposition to the Government's motion for summary judgment as a valid litigation strategy. The only purpose the court can assign to the filing of the affidavit was an attempt to delay the proceedings in this case by falsely creating an issue of fact to defeat summary judgment. Such a result would force the parties and the court to incur the time and expense of a trial. If parties are allowed to undertake this type of strategy, the summary judgment procedural device will become essentially useless.

Because the court finds that Nguyen's affidavit was submitted in bad faith and for purposes of delay, the court must order Nguyen to pay the Government the reasonable expenses, as well as attorney's fees, it incurred as a result of the filing of the affidavit. Fed. R. Civ. P. 56(g); see Modica v. United States, 518 F.2d 374, 377 n.2 (5th Cir. 1975)(affirming the district court's finding of bad faith and an award of all costs in the action under Rule 56(g) where a grocer claimed in his affidavit that he was "completely unaware" of any food stamp program violations after he had earlier been questioned in an administrative hearing concerning wrongful

purchases being allowed with food stamps).

### III.  Motion for Summary Judgment

#### A. Undisputed Facts

Rather than repeating the facts set forth above, the court incorporates those facts here and sets forth these additional undisputed facts: The shipment of purses and wallets sent from Vietnam to Nguyen (Customs Entry No. 990-0891780-1) was presented to CBP officers for inspection and release into the commerce of the United States on March 13, 2003. (Acrey Decl. at ¶ 4).  The declared value of the shipment was $685.00 on the packing list and estimated at $150.00 on the Transportation Entry and Manifest Document.  (Duff Decl. at ¶ 33; Acrey Decl. at ¶ 4).  Upon inspection of the merchandise submitted for entry on Customs Entry No. 990-0891780-1, the CBP officers determined that the shipment contained 114 handbags and 40 wallets, each bearing a counterfeit LOUIS VUITTON trademark.  (Vick Decl. at ¶¶ 2-4 ; Acrey Decl. at ¶¶ 2-4).  Nguyen has admitted that the purses and wallets were counterfeit.  See Defendant's Memorandum Brief in Opposition to Plaintiff's Motion for Summary Judgment ("Defendant's Brief") at p. 3.  The CBP officers seized the suspected counterfeit merchandise on March 31, 2003, in accordance with 19 C.F.R. §133.21(b).  (Vick Decl. at ¶ 4; Acrey Decl. at ¶ 5).

As stated above, by letter dated April 3, 2003, the CBP (by and through its Fines, Penalties and Forfeitures Officer, Eloise Duff) notified Nguyen of the seizure of the counterfeit goods and sent him an informational document entitled "Notice of Seizure and Information for Claimants Form AF-Post," which described the process of administrative forfeiture and potential for fines and penalties.  (Duff Decl. at ¶ 12).  The form also advised him that a civil penalty was

going to be issued at a later date. (Duff Decl.at ¶ 12). The certified mail receipt was mailed back to CBP, dated April 4, 2003. (Duff Decl. at ¶ 14). On April 8, 2003, the CBP received from Nguyen a signed "Election of Proceedings Form AF-Post," dated April 4, 2003. (Duff Decl. at ¶ 15). However, no complaint or claim or monetary bond accompanied the election of proceedings form. (Duff Decl. at ¶¶ 15, 20, 23).

On April 10, 2003, Duff wrote Nguyen advising him that, although he had checked the box on the Election of Proceedings form expressing his choice to have the case referred for court action, he had not provided a written claim nor had he provided a cost bond. (Duff Decl. at ¶ 20). These two things were needed before the matter could be referred for judicial forfeiture proceedings. (Duff Decl. at ¶ 23). On April 10, 2003, Duff also posted legal notice of the proposed administrative forfeiture proceeding at the Office of the Port Director of the Port of Mobile, reflecting that the forfeiture was to become final by May 2, 2003, if not contested. (Duff Decl. at ¶ 21). As discussed above, Duff had a conversation with Nguyen's attorney on April 15, 2003, concerning the procedures for administrative forfeiture and the upcoming fine or civil penalty, and on April 16, 2003, Nguyen visited the CBP office seeking advice on what he should do about the purses and wallets. (Duff Decl. at ¶¶ 22, 25). Duff informed him that it was his decision about what to do and referred him to the letter she had written him on April 10, 2003, in which she pointed out what was needed to place his case into the court arena. (Id.).

The CBP issued a Declaration of Administrative Forfeiture on May 5, 2003, under the authority of 19 U.S.C. §§ 1526(b) and (e) and 19 C.F.R. § 133.21, for violation of 15 U.S.C. § 1124. (Duff Decl. at ¶ 26). On July 2, 2003, a Disposition Order was issued to effect the destruction of the goods, except for adequate samples to be used for estimating the value of the

goods for the penalty phase and for use as evidence, if necessary. Of the 114 purses, all but 4 were destroyed, and of the 40 wallets, all but 3 were destroyed. (Acrey Decl. at ¶ 5). All of these samples have remained in the custody of the CBP in Mobile, Alabama. (Duff Decl. at ¶ 28).

Following an appropriate review of official import records, the CBP found no information that Nguyen had been the subject of any previous seizure of counterfeit goods. (Duff Decl. at ¶ 31; Allen Decl. at ¶ 4). The civil penalty or fine for the first seizure is the total amount the goods would be listed for sale at the MSRP, pursuant to 19 U.S.C. § 1526(f)(2) and 19 C.F.R. §133.27(a). On July 10, 2003, trained and experienced CBP personnel researched the appropriate MSRP for the counterfeit goods, as if they were genuine, and calculated the appropriate civil fine or penalty. (Allen Decl. at ¶¶ 2, 3, 5, 7-9; Duff Decl. at ¶¶ 13, 29-30). On July 10, 2003, the CBP issued a notice and demand for payment of the appropriate civil fine of $80,980.00 to Nguyen, under the authority of 19 U.S.C. § 1526(f) and 19 C.F.R. § 133.27. (Duff Decl. at ¶¶ 29-30, 32; Allen Decl. at ¶¶ 8-9). The notice provided that Nguyen had 60 days within which to file a petition for relief or to make payment, further advising that if payment or a petition for relief was not received, the matter would be referred to the United States Attorney. The time period within which to petition for relief or make payment expired on or about September 8, 2003. (Duff Decl. at ¶ 32). Nguyen did not file any petition or claim for relief from the imposition, nor did he make payment of any of the civil fine within the time allowed nor has he since that date. (Duff Decl. at ¶ 35). Accordingly, the assessed fine became final on or about September 8, 2003.

### B.  Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted:

"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'"  Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, at 249-50 (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  See Anderson, 477 U.S. at 251-52.  The moving party bears the burden of proving that no genuine issue of material fact exists.  O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor.  Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir.1999).  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment."  Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party

"must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Co., 32 F.3d 520, 524 (11th Cir.1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation and citation omitted).[5]

**C.  Conclusions of Law**

Pursuant to 19 U.S.C. §1526(e), any merchandise bearing a counterfeit trademark that is imported into the United States is required to be seized, and, in the absence of the written

---

[5] The Government has argued that the decision by the CBP is entitled to Chevron deference. However, in United States v. Able Time, Inc., 545 F.3d 824, 835-36 (9th Cir. 2008), a case in which the CBP filed a civil penalty action against an importer, the Ninth Circuit held that the CBP's position was not entitled to deference because the statutes at issue are not ambiguous. This court also finds that the statutes are not ambiguous, and therefore, the Government's position is not entitled to Chevron deference.

15

consent of the trademark owner, the merchandise is to be forfeited. In addition, under 19 U.S.C. §§1526(f) and 1595a(b), any person who directs, assists financially or otherwise, or aids and abets the importation of merchandise for sale or public distribution if the merchandise is seized, shall be subject to a civil fine. The fine for the first seizure shall not be more than the value the merchandise would have had if it were genuine, according to the manufacturer's suggested retail price ("MSRP"). 19 U.S.C. §1526(f)(2). The imposition of a fine is within the discretion of the CBP and is in addition to any other civil, criminal or other remedy authorized by law. 19 U.S.C. §1526(f)(4).

In United States v. 10,510 Packaged Computer Towers, 152 F. Supp. 2d 1189 (N.D. Cal. 2001), the court noted that the CBP's agency guidelines discuss the Congressional intent of these statutes:

> Through the amendment of 19 U.S.C. 1526(e) and the adoption of 19 U.S.C. 1526(f) in sections 9 and 10 of the Anticounterfeiting Consumer Protection Act (the ACPA, Public Law 104-153, 110 Stat. 1386), Congress indicated its intent to control and prevent commercial counterfeiting and to increase civil penalties for the importation of merchandise bearing counterfeit trademarks.
>
> Therefore, imported goods bearing a counterfeit mark ... shall be seized and forfeited ... and civil penalties should be routinely imposed under 19 U.S.C. 1526(f).

Id. at 1196-97.

Sections 1526(f) and 1595a(b) clearly set forth the requirements for imposition of a civil fine. In order to assess a civil fine, the CBP need only find that a person has directed, assisted financially or otherwise, or aided and abetted the importation of seized merchandise. Nguyen does not dispute that the purses and wallets were counterfeit, that they were properly seized, or that they were shipped to him. The only ground he relies upon in opposing summary judgment

is his argument that there is a genuine issue of fact as to whether he was the importer of the purses and wallets. The only facts he offers to support this argument are his testimony that he never asked any third party to ship these goods to him and his testimony that he does not know the person whose name was listed as the shipper. However, even assuming, without deciding, that those statements were enough to create a question of fact regarding whether he was the "importer," they do not defeat summary judgment in this case.

As noted above, the CBP must only find that a person assisted, financially or otherwise, in the importation of counterfeit goods or aided or abetted the importation of the goods. Considering the evidence in the light most favorable to Nguyen, the non-movant, this court can only conclude that the CBP properly assessed the fine against Nguyen. The evidence clearly shows that Nguyen, at the least, assisted in the importation of the seized purses and wallets. As described in detail above, he began taking measures, prior to the arrival of the goods in Mobile, to secure their clearance and release through customs. He paid over $200 to a customs broker to accomplish their release, and he sought an attorney's assistance in securing their release. There is no evidence that Nguyen ever disclaimed an interest in the counterfeit purses and wallets. For these reasons, the court finds that there is no disputed issue of material fact in this case, and that the Government is entitled to summary judgment in its favor as a matter of law.

Pursuant to §1526(f)(2), the fine for the first seizure of counterfeit goods shall not be more than the value the merchandise would have had if it were genuine, according to the MSRP. According to the CBP, the MSRP of the seized purses and wallets if they had been genuine is $80,890.00. Nguyen does not dispute this valuation. (Nguyen's Brief at p. 3). This is the amount of the fine the CBP assessed against Nguyen.

The Government also seeks an award of prejudgment interest under the Debt Collection Act of 1982, 31 U.S.C. §3717 and 31 U.S.C. §3701(b)(1)(F). In 31 U.S.C. §3717(a)(1), the statute provides that "[t]he head of an executive, judicial, or legislative agency shall charge a minimum annual rate of interest on an outstanding debt on a United States Government claim....." The same code section further states that "[i]nterest under subsection (a) of this section accrues from the date . . . notice of the amount due is first mailed to the debtor." 31 U.S.C. §3717(b)(2). Nguyen has not objected to or opposed the entry of prejudgment interest; therefore, the court finds, in its discretion, that the Government is entitled to prejudgment interest.

Section 3717 provides that "a minimum annual rate of interest on an outstanding debt [shall be charged] on a United States Government claim owed by a person that is equal to the average investment rate for the Treasury tax and loan accounts for the 12-month period ending on September 30 of each year, rounded to the nearest whole percentage point." 31 U.S.C. § 3717. Subsection (c)(2) of the statute instructs that "[t]he rate of interest charged under subsection (a) of this section . . . remains fixed at that rate for the duration of the indebtedness." 31 U.S.C. § 3717(c)(2). In the present case, the debt began to accrue interest on July 10, 2003, the date of the demand for payment. Pursuant to 31 U.S.C. §3717, the Department of the Treasury issued notice that "the applicable [interest] rate is 2 percent for calendar year 2003." Treasury Current Value of Funds Rate, 67 Fed. Reg. 65,187 (October 23, 2002). Therefore, interest on the debt of $80,980.00 should be calculated at 2.00 percent interest per annum. The Government is thus entitled to prejudgment interest on this final principal amount of $80,980 from July 10, 2003, until judgment is entered in the amount of $4.43 per day.

**IV.  Conclusion**

Accordingly, for the reasons stated herein, the plaintiff's motion to strike the defendant's affidavit is **GRANTED, in part, and DENIED, in part,** as set forth in Section II above.  It is also hereby **ORDERED** that the defendant is to pay to the plainiff all costs, including attorney's fees, incurred as a result of his filing of the affidavit in opposition to the motion for summary judgment in bad faith and solely for purposes of delay.  The plaintiff is **ORDERED** to submit a declaration of costs, including attorney's fees, no later than September 8, 2009.

Also, for the reasons stated herein, the plaintiff's motion for summary judgment is due to be and hereby is **GRANTED.**  The plaintiff's request for prejudgment interest, being unopposed, is also **GRANTED**.  Costs are hereby taxed to the defendant  A separate judgment will be entered.[6]

**DONE and ORDERED** this 24th day of August, 2009.

    /s/   Callie V. S. Granade  
CHIEF UNITED STATES DISTRICT JUDGE

---

[6]  As defendant's attorney has been suspended from the practice of law, and no new attorney has filed a notice of appearance, the clerk of court is directed to send a copy of this order and the accompanying judgment to the plaintiff.